J. R. HILSDORF, Respondent, v. THE FIRST STATE BANK OF REGAN, a Corporation, and A. M. Davenport, Appellants.

(191 N. W. 478.)

**Chattle mortgages — evidence held to support finding of trial court that plaintiff's lien was prior to that of defendant.**

In an action of claim and delivery, where the plaintiff claimed a lien, prior to that of defendant, on the proceeds of a crop of rye, the evidence is examined, and it is held to support the finding of the trial court to the effect that the plaintiff's lien was prior.

Opinion filed December 6, 1922.

Chattel Mortgages, 11 C. J. § 412 p. 662 n. 17.

Appeal from the judgment of the District Court of Burleigh County, *Nuessle*, J.

Affirmed.

*James A. Hyland*, for appellant.

*McCulloch & McCulloch*, for respondent.

BIRDZELL, Ch. J. This is an appeal from a judgment and from an order denying a motion for a new trial, in an action of claim and delivery. The action was tried in the district court of Burleigh county, before the court, without a jury. The subject-matter is a check for $2,050.50, representing the proceeds of the sale of a car load of rye. The facts are as follows: The plaintiff was the owner of the land upon which the rye was raised; the land was leased to A. N. and Lloyd Davenport; the rye was seeded in the fall of 1918, and the lease, executed about the time of the seeding, contained a stipulation to the effect that the lessees mortgaged their interest in all crops raised on the premises during the life of the lease to secure all money advanced, paid to, or out for, the lessees, by the lessor, and to secure the plowing back of the lands in the fall. Another lease, containing the same stipulation, was executed on the 10th of April, 1919. Under these leases, the plaintiff was entitled to one half the crop as rent. The check in question was given for rye raised under the lease, and was made payable to the order of A. N. Davenport, J. R. Hilsdorf, and the First State Bank of Regan. By stipulation of the parties, the check was cashed

and one half the proceeds paid over to the plaintiff. The balance is in dispute, the plaintiff claiming it under the lien clause of his lease, on account of advances made, and the defendant bank claiming it under a chattel mortgage executed by the Davenports. The bank claims that there was a concurrent understanding between it and the plaintiff that its mortgage should constitute a prior lien on the rye. The Davenports, lessees, are in default and are in reality not interested in this litigation, for the reason that, regardless of the outcome, the proceeds of the rye check will be used to discharge a lien, or liens, in favor of one or another of their lien creditors.

Both parties upon this appeal concede the priority of a mortgage lien existing in favor of the Fishman Mercantile Company, to secure the payment of two notes aggregating $283.30, with 10 per cent interest.

In the court below judgment was entered in favor of the plaintiff for the amount of his advances, which were found to be $506.14, with interest from April 1, 1920, and costs.

The principal contention upon this appeal is that the evidence is insufficient to support the finding and conclusion of the trial court, to the effect that the plaintiff's lien for advances under the lease is prior to the defendant's chattel mortgage lien on the rye. In support of this contention it is urged that the testimony of one Garness, and of both the Davenports, clearly establishes a waiver of the plaintiff's lien in favor of the mortgage lien of the bank, and that their testimony is further supported by additional circumstantial evidence, while it is controverted only by the testimony of the plaintiff. Garness testified that Lloyd Davenport, A. N. Davenport, and the plaintiff all came to the bank together, when they made, or renewed, the leasing contract covering the west half (W½) of section 33–144–79; that it was understood between all of them that Lloyd Davenport was buying a team from Hilsdorf, the plaintiff, for which the latter required security, and that as additional security, he, the plaintiff, should have a first mortgage on the Davenport's share of the flax crop. He further testified "we had talked it over between us that Davenports would give us a first mortgage on the crop, but Mr. Hilsdorf was to have first on the flax as additional security with (for) the team, and that the bank took a chattel mortgage covering the crop while all four were present." The testimony as to the understanding that the bank should have a first

mortgage on the crop, excepting the flax, is corroborated by the Davenports, who testified that there was such an understanding. In addition to this, the appellant claims that further corroboration of the agreement is established by the conduct of the plaintiff upon at least two occasions. It seems that the bank promptly forwarded its mortgages to the register of deeds for filing, whereas the plaintiff was not so diligent in this respect. When the plaintiff learned that defendant's mortgages were filed first, it appears that he protested, while evidently laboring under a mistaken idea of the law, and thinking that, as between him and the bank, the first mortgage filed would be prior. Garness says he told the plaintiff that his mortgage was nevertheless first on the flax, and on the horses. But we are of the opinion that the conduct induced by the order of filing is of no value as corroboration of the defendant's view, for the reason that the plaintiff apparently did not concede the defendant's mortgage was to be first upon any part of the crop, except as he might have thought that it acquired priority by reason of having been first filed. Another circumstance referred to is that when the plaintiff desired to pay a thresh bill, he presented orders upon the defendant so that he might secure a waiver of the defendant's lien, in so far as the thresh bill was concerned. Neither, in our opinion, is this circumstance of any particular value as corroboration, for prudence might well dictate such a course on the part of the plaintiff, who knew that the defendant was making some claim to the property adverse to his own. On the other hand, it appears in the record that the bank had been doing business with the Davenports for some time; that it had, in fact, recommended them to the plaintiff as tenants; that they had become indebted to the bank, and that the bulk of the indebtedness, for which the bank claims a prior lien by virtue of its crop mortgage, was incurred before the crop season in question, and it further appears that the plaintiff was the principal factor in financing the cropping operations. There is no strong probability that this plaintiff, who, according to the record, is a party showing considerable ability to protect his own business interests, would voluntarily waive a lien, which he had under his leasing contract, in favor of an existing creditor, and especially when there was every prospect that the tenants would require further assistance by way of advances before the crop could be matured. As we view the record, therefore, we are

of the opinion that the findings of the trial court are well supported by the evidence and should not be disturbed.

There is a further contention to the effect that the plaintiff, through neglect to enforce the security, which was admittedly first, upon the flax crop, should be prevented from taking priority over defendant as to the rye. We think the record clearly shows that the flax crop was dissipated more through agencies over which the defendant had no control, than through his own negligence. It was practically destroyed by reason of early snows and the opening of the range for pasture purposes. At any rate it turned out to be of little value, and it does not appear that the plaintiff is primarily responsible for its loss. The judgment appealed from is affirmed.

ROBINSON, CHRISTIANSON, and BRONSON, JJ., concur.

GRACE, J. (specially concurring). My understanding of the evidence and of the meaning of the principal opinion is, that the defendant bank had actual notice of plaintiff's mortgages, which he has by reason of the mortgage clause in each of the leases. If this is true, and I think it is, the matter of the time of filing defendants' chattel mortgages or the lease, is immaterial.

I agree with the conclusions of the principal opinion.